UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CITIBANK, N.A.,<br>    *Plaintiff and Counterclaim Defendant*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>    *Defendant and Counterclaim Plaintiff,*<br><br>and<br><br>LINDA E. ANSANELLI, *et al.*,<br>    *Counterclaim Defendants.* | No. 3:22-cv-00922 (JAM) |

## ORDER APPOINTING RECEIVER

WHEREAS counterclaim plaintiff United States of America filed a counterclaim in this action to enforce federal tax liens associated with defendant Vincent W. Ansanelli, Jr.'s unpaid income tax liabilities against a parcel of real property located at 36 Peach Orchard Lane, Borough of Bantam, Litchfield, Connecticut;

WHEREAS on March 4, 2023, this Court entered a Judgment, final pursuant to Rule 54(b) as to all issues except the claim or interest of Citibank, N.A., authorizing enforcement of federal tax liens by judicial sale of the subject real property (the "Property," more fully described below); and

WHEREAS the United States has now moved this Court for the appointment of a Receiver to sell such property, and has recommended the appointment of Sharon Wyant McGuire, a Real Estate Salesperson with William Pitt Sotheby's International Realty in Washington Depot, CT (6 Green Hill Road, P.O. Box 239, Washington Depot, CT 06743; office: (860) 868-6927), who has signed a declaration affirming that she is ready and willing to assume the responsibilities of a Court appointment as Receiver;

1

IT IS THEREFORE ORDERED THAT:

1. Sharon Wyant McGuire is appointed as Receiver for the purposes of assisting in the enforcement of the federal tax liens against a parcel of real property located in Borough of Bantam, Litchfield, Connecticut, pursuant to 26 U.S.C. §§ 7402(a) and 7403(d), and is directed to take custody and arrange for the sale of such real property (the "Property"), the legal description of which is as follows:

> ALL THAT CERTAIN piece, parcel, lot, or tract of land together with the buildings and improvements thereon standing situated in the Town and County of Litchfield and State of Connecticut shown as a certain 4.613± acre parcel of land on a certain map entitled:
>
> > *Property/Boundary Survey Map Prepared For Vincent W. Ansanelli Linda E. Ansanelli Peach Orchard Lane Litchfield, Connecticut Scale 1" = 50' May 1999 Zone R-80* Prepared and certified substantially correct by Samuel P. Bertaccini, Jr., RLS #10383, Litchfield, Connecticut.
>
> The aforesaid map has been filed for record with the Litchfield Town Clerk on May 28, 1999 and recorded as Map No. 100674 to which reference may be had for a more particular description of the aforesaid premises.
>
> The property is also known as Lot 34 in Section 2 of Avalon Farms subdivision so-called and is shown on a certain set of subdivision maps (including cover and sheets 1 through 13 inclusive) the sheet showing the aforesaid Lot 34 being entitled Avalon Farms, Rt. 202, Litchfield, Connecticut prepared by Empire Associates, Inc., Plainville, Connecticut under date of Aug. 1977 and filed for record with the Litchfield Town Clerk as Map No. 18-4.
>
> The property is conveyed TOGETHER WITH a right to pass and repass over all roadways shown on the aforesaid subdivision maps and the rights contained in Warranty Deed from Peter H. Tillou to A. Lawrence Groo dated and recorded on March 1, 1994 in Volume 221 Page 638 of the Litchfield Land Records and SUBJECT TO:
>
> > (1) Taxes due to the Town of Litchfield on the Grand List of October 1, 1998 which the Grantee assumes and agrees to pay.
> > (2) All buildings and set-back restrictions, and any and all laws, ordinances and governmental regulations restricting, regulating, or prohibiting the occupancy, use

> or enjoyment of the land and regulating the character, size or location of any improvements now or hereafter erected on said land.
>
> (3) A Declaration of Restrictions and Covenants dated January 5, 1978 and filed for record with the Litchfield Town Clerk on January 24, 1978 and recorded in the Litchfield Land Records in Volume 161 Page 169.
>
> Prior Deed References:  Meaning to describe the property conveyed to Vincent W. Ansanelli, Jr., and Linda E. Ansanelli, by warranty deed of Lawrence Groo, dated May 28, 1999, and recorded in the Litchfield Land Records at Volume 247, Pages 670-671, on May 28, 1999; and the property purported to be conveyed to Linda E. Ansanelli by quitclaim deed of Vincent W. Ansanelli, Jr., dated November 17, 2000, and recorded in the Litchfield Land Records at Volume 254, Pages 719-720, on December 1, 2000.

The Receiver is directed to arrange for the sale of the Property free and clear of any rights, titles, claims, or interests of any of the parties to this action (including any rights of redemption), except the Property shall be sold subject to the personal property lien of Hocon Gas of Torrington, LLC, on one 500-gallon underground propane tank located on the Property (Tank serial # 2SD058293), subject to the final authorization and confirmation of the Court.

2. The Receiver shall have the authority to arrange for the sale of the Property, subject to final authorization and confirmation by this Court, in any manner approved by the United States. The terms of the purchase agreement shall include that the balance of the purchase price shall be paid in cash at closing, and shall include an earnest money deposit, in an amount to be approved by the United States, forfeitable upon the purchaser's failure to perform and to be paid to the United States as liquidated damages.

3. The closing shall not occur until after the sale of the Property has been finally authorized and confirmed by further order of this Court on motion of the United States. The closing shall be scheduled for no earlier than March 31, 2023. At closing, the purchaser(s) shall receive a Receiver's deed to the Property executed by the Receiver, transferring the property subject to the personal property lien of Hocon Gas of Torrington, LLC.

4.       All persons occupying the Property shall vacate it within 14 days of a notice to vacate from the Receiver following an order of this Court authorizing and confirming the sale of the Property. When vacating the premises, each person must take with them his or her personal property (but leaving all improvements, buildings, fixtures, and appurtenances to the Property). If any person fails or refuses to vacate the Property by the date specified in this Order, the Receiver is authorized to coordinate with the United States Marshals Service to take all actions that are reasonably necessary to have those persons ejected. The United States Marshals Service is authorized and directed to take any and all necessary actions, including but not limited to the use of reasonable force, to enter and remain on the premises, which includes, but is not limited to, the land, buildings, vehicles, and any other structures located thereon, for the purpose of executing this Order. The United States Marshals Service is further authorized and directed to arrest and/or evict from the premises any and all persons who obstruct, attempt to obstruct, or interfere or attempt to interfere, in any way, with the execution of this Order.

5.       Any personal property remaining on the Property 14 days after a notice to vacate provided pursuant to this Order is deemed forfeited and abandoned, and the United States, the Receiver, the United States Marshals, or their agents are authorized to dispose of the personal property in any manner they see fit, including sale, in which case the proceeds of the sale are to be applied first to the costs and expenses of sale and the balance shall be held in escrow by the Receiver or Clerk of the Court pending distribution pursuant to further order of this Court.

6.       The Receiver shall have all of the rights and powers necessary to fulfill the Receiver's obligations under this Order, specifically including, but not necessarily limited to, the power to enter the Property, to inspect the Property, to advertise the sale of the Property, to show the Property to prospective buyers, and to take any action reasonably necessary to protect and

preserve the value of the Property prior to sale and to put the Property into saleable condition, including making expenditures of funds that are first approved of by the United States for reasonable and necessary maintenance and minor improvements. The Receiver may, but is not required to, make payment of real property taxes, water, sewer, and other utility charges or fees for the Property and/or the cost of having a contractor cut the lawn or shovel snow. And, in particular, the Receiver may undertake all reasonably necessary repairs, maintenance, and costs to restore and maintain heating in the house.

7. The Receiver shall set an initial listing price for the Property in consultation with counsel for the United States and may reduce the listing price as necessary in her judgment with the consent of counsel for the United States, or as otherwise ordered by the Court.

8. The United States is required to submit progress reports to the Court every ninety (90) days from the date of this Order until there is a final confirmation of sale.

9. If the Property is sold by the Receiver pursuant to this Order, the Receiver shall be compensated from the proceeds of the sale of the Property (a) with a commission not to exceed six (6) percent of the gross sale proceeds paid by the buyer at closing, which shall be shared with any buyer's agent in a commercially reasonable proportion, and (b) reimbursed for her reasonable and necessary expenditures to protect and preserve the value of the Property that were first approved by the United States. This commission and reimbursement may be disbursed to the Receiver at closing, though only with prior approval by the United States after providing documentation establishing the correct amount of compensation.

10. The Receiver shall remit the net proceeds of the sale, after customary closing costs payable by a seller (including the Receiver's commission and reimbursement authorized by

this Order) and payment of all unpaid local property taxes entitled to priority under 26 U.S.C. § 6323(b)(6), to the Clerk of this Court for deposit into the Court registry.

11. When moving for final authorization and confirmation of a sale of the Property, the Receiver and/or the United States shall submit to the Court with the motion (a) an executed purchase agreement, (b) a report prepared by the Receiver of sales of comparable property to the Court, and (c) an appropriate order for net sale proceeds to be deposited by the Clerk, in accordance with D. Conn. Local Rule 67(a).

12. After the closing and the resolution of all claims, the United States shall file a motion for distribution of the net proceeds of sale. The motion shall specify the persons or entities that are to receive the remaining proceeds of sale and the respective amount each of them is to receive.

13. All parties, including Vincent W. Ansanelli, Jr., and other persons acting in concert with them or on their behalf shall cooperate with the Receiver in her efforts to fulfill her duties and obligations under this order; they shall neither do anything that tends to reduce the value or marketability of the Property nor cause or permit anyone else to do so; and they shall not record any instruments, publish any notices, or take any other action (such as running newspaper advertisements, posting signs, or making internet or social media postings) that may directly or indirectly tend to adversely affect the value of the Property or that may tend to deter potential purchasers, nor shall they cause or permit anyone else to do so. Violation of this paragraph shall be deemed a contempt of court and punishable as such.

It is so ordered.

Dated at New Haven this 4th day of March 2023.

                                                /s/ *Jeffrey Alker Meyer*
                                                Jeffrey Alker Meyer
                                                United States District Judge